IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHERRI R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV267 |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Sherri R. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on September 29, 2021, alleging a disability onset date of February 4, 2020 in both applications. (Tr. at 19, 246-49, 254-61.)[2]

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

She later amended her alleged onset date to August 23, 2021. (Tr. at 19, 284.) Plaintiff's applications were denied initially (Tr. at 96-119, 149-68) and upon reconsideration (Tr. at 120-43, 171-86). Thereafter, she requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 188-89.) On October 12, 2023, Plaintiff, along with her attorney, attended the subsequent hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 19, 44-74.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 38), and, on February 12, 2025, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since August 23, 2021, her amended alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 22.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Fibromyalgia, Degenerative disc disease ("DDD"), Facet disease, Hip bursitis, Chronic pain syndrome, Irritable bowel syndrome ("IBS"), Obesity, Depression, and Anxiety.

(Tr. at 22.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 24-27.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work, but with the following, non-exertional limitations:

> [Plaintiff] can sit, stand, and walk up to 6 hours each in an 8-hour workday. She can occasionally use ramps and stairs, balance, stoop, kneel and crouch. She can frequently reach, handle, finger and feel. [Plaintiff] can frequently use hand controls and occasionally use foot controls. [She] must avoid exposure to loud noise levels, temperature extremes, and workplace hazards such as unprotected heights, dangerous machinery, or climbing of ladders, ropes, or scaffolds. [Plaintiff] can perform and carry out simple, routine tasks at a non-production-rate-pace, make simple, work-related decisions, adapt to occasional changes in the workplace setting, and tolerate frequent contact with supervisors, coworkers, and the public.

(Tr. at 27.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that all of Plaintiff's past relevant work exceeded the above RFC. (Tr. at 35-36.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 36-38.)

Plaintiff now contends that the ALJ's failure to define the term "non-production-rate-pace" prevents judicial review of Plaintiff's RFC assessment. (Pl.'s Br. [Doc. #8] at 3.) Plaintiff's challenge relies on the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) and its progeny. In Mascio, the Fourth Circuit explained that, where moderate limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the

ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff s moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding

moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

In the present case, the ALJ found no more than moderate limitations in concentration, persistence and pace, but addressed those limitations in the RFC by concluding that Plaintiff could "perform and carry out simple, routine tasks at a non-production-rate-pace" with additional limitations to work involving (1) simple, work-related decisions, (2) occasional changes in the workplace setting, and (3) frequent contact with supervisors, coworkers, and the public.

The ALJ included further explanation for his reasoning at step three of the sequential analysis. In analyzing Plaintiff's mental limitations, particularly those relating to concentration, persistence, and pace, the ALJ explained that

> [t]he balance of the records reflected grossly normal mental status and psychological or psychiatric findings when noted. [Plaintiff] was alert, fully oriented, cooperative, and exhibited no significant learning barriers or deficits with memory, concentration, or cognitive functioning. [She] possessed a logical, goal-oriented thought process, was able to follow instructions and respond to questions from healthcare providers and comply with treatment outside of a doctor's office. The record fails to show any mention of substantial distractibility or an inability to complete testing that assesses concentration and attention.
>
> . . .
>
> [Plaintiff] had appropriate grooming and hygiene, communicated effectively, behaved normally, managed her own healthcare and appointments, had no problem establishing rapport or getting along with treatment providers, and appeared comfortable during appointments. There was some mention of conservative outpatient treatment but no evidence that [Plaintiff] required or was referred for inpatient or partial psychiatric hospitalization or other form of

> more intensive mental health intervention. [Plaintiff] did not receive a level of collateral support or mental health treatment that is usually associated with chronic or debilitating mental illness, indicating that she has been able to respond to demands, adapt to changes, and manage her psychologically based symptoms. Additionally, [Plaintiff's] mental symptomology was generally well controlled with medication and did not require significant changes or adjustments in dosages.
>
> There is insufficient evidence that [Plaintiff's] mental health conditions caused any significant objective deficits or substantial functional limitations regarding [Plaintiff's] ability to perform all work-related or regular daily activities.

(Tr. at 26) (internal citations omitted). In terms of daily activities, the ALJ further noted that Plaintiff was able to complete household chores and errands, manage finances, help care for her grandchild, read, follow instructions, and watch television without distraction. (Tr. at 26.)

Later, when assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony, in which she asserted that she is disabled

> due to a combination of physical and psychological symptoms or conditions that affect her memory, concentration, and understanding, as well as her ability to lift, stand, walk, sit, squat, bend, kneel, climb stairs, reach, follow instructions, and complete tasks. . . . [Plaintiff] reported mental health symptoms including mood swings, depression, lack of motivation or interests in activities, excessive worry, crying spells, feelings of hopelessness or helplessness, lack of focus or distractibility, racing thoughts, paranoia, panic attacks, irritability, and social anxiety with fear of being alone but also difficulty being around crowds.

(Tr. at 28.) However, the ALJ further determined that that the totality of the evidence failed to support Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms. (Tr. at 29.) In particular, with regard to Plaintiff's ability to concentrate, persist, and maintain pace, the ALJ found that

> [Plaintiff's] mental status examinations were generally rather benign and unexceptional. On examination, . . . [Plaintiff] was able to follow instructions and complete assigned tasks. She exhibited average intelligence with no gross defects with cognition, executive functioning, attention, or concentration. There were no loose associations or other symptoms of a formal thought

> disorder, and [Plaintiff] demonstrated an intact memory, appropriate fund of knowledge, good insight and judgment, logical and coherent thought processes, and normal thought content. . . .

(Tr. at 32.) In terms of treatment, the ALJ noted that Plaintiff's mental health symptoms during the time period at issue "were intermittent and generally well controlled with medication." (Tr. at 32.) In fact, the ALJ noted that "at [Plaintiff's] most recent check-up, [she] reported that she was doing well and indicated that she was not feeling down, depressed, or hopeless, or experiencing little interest or pleasure in doing things at all." (Tr. at 32, 1408, 1412.) "Overall," the ALJ concluded, Plaintiff's "mental health treatment history shows that the frequency, intensity, and persistence or mental health symptoms are not at a level that would keep her from performing all work-related activities." (Tr. at 32.) The ALJ concluded that "[t]he medical records also demonstrate that, based on psychological factors, [Plaintiff] has no more than moderate functional difficulties," and "[n]otwithstanding these difficulties [she] retained the mental capacity to perform and carry out simple, routine, and repetitive tasks at a non-production rate pace[,] make simple work-related decisions and adapt to occasional changes in a work environment with frequent social interactions." (Tr. at 32.) In making this finding, the ALJ again noted her "history of her conservative treatment," her "rather mild findings on both physical and mental status examinations" and her ability to perform a variety of daily activities. (Tr. at 33.)

Crucially, in assessing Plaintiff's RFC, the ALJ also considered the opinions of the State agency psychological consultants, Lori Souther, Ph.D., and Jennifer Fulmer, Ph.D. (Tr. at 34.) At the initial level, Dr. Souther found, in pertinent part, that Plaintiff had the ability to understand and remember "instructions of varying complexity," and perform simple, routine,

repetitive tasks "at a non-rapid pace." (Tr. at 105.) At the reconsideration level, Dr. Fulmer echoed Dr. Souther's opinion, including the limitation to "a non-rapid pace," and concluded that Plaintiff "appears capable of [simple, routine, repetitive tasks] in a low production environment with limited [public] contact." (Tr. at 140-41.) The ALJ determined that the State agency opinions were "generally persuasive for the relevant period, particularly in closer proximity to the prior ALJ decision and during the period [Plaintiff] was working in 2021." (Tr. at 34.) However, the ALJ also noted that,

> [l]ater on during the relevant period, [Plaintiff's] combination or symptoms could logically lead to slightly greater limitations based upon pain[,] but those limitations still have to be considered in the context of the relatively normal findings on both physical and mental status evaluations. I decline to directly adopt the opinions of the state agency examiners because they were non-examining sources without the benefit of the full record or the testimony and had no direct contact with [Plaintiff]. They did not evaluate all of the evidence and provided somewhat limited discussion as to the basis for their prescribed opinions regarding functional abilities/limitations.

(Tr. at 34.) In other words, the ALJ gave Plaintiff the benefit of the doubt by adopting and, where appropriate, increasing, the limitations opined by the State agency psychological consultants to account for Plaintiff's reports of increased symptoms.

In a similar case, the Fourth Circuit held that substantial evidence supported a limitation to "low stress non-production jobs with no public contact." Sizemore, 878 F.3d at 80-81. Here, as in Sizemore, the ALJ's RFC finding specifically addressed Plaintiff's limitations, and adequately accounted for Plaintiff's no more than moderate limitations in concentration, persistence, and pace. In addition, as in Sizemore, 878 F.3d at 80–81, the ALJ complied with Mascio by relying on the uncontested opinions of the State agency psychologists to support his assessment of Plaintiff's concentration, persistence, and pace

limitations and ability to work with an RFC accommodating that assessment. Overall, the ALJ's discussion, the context given, and the additional limitations set out in the RFC provide sufficient explanation for the RFC limitations related to concentration, persistence, and pace.

Plaintiff does not directly challenge any of this determination and analysis. Instead, Plaintiff argues that the ALJ's failure to define the RFC limitation to "non-production-rate-pace" is problematic because the ambiguity of this phrase prevents the Court from determining whether the RFC adequately accounts for Plaintiff's moderate limitations in concentration, persistence, and pace. As Plaintiff correctly notes, in Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019), the Fourth Circuit identified problems with the ALJ's analysis, including that the ALJ found that the claimant "could not perform work 'requiring a production rate or demand pace,'" without giving "enough information to understand what those terms mean." Accordingly, Thomas held that, "[w]ithout further explanation," the court could not determine "whether the RFC finding—particularly the portion restricting Thomas to jobs that do not require a 'production rate' or 'demand pace'—properly account[ed] for Thomas's moderate limitations in concentration, persistence, and pace." Id. at n.5; see also Perry v. Berryhill, 765 F. App'x 869 (4th Cir. 2019) (finding that the failure to define the term "non-production oriented work setting" precluded meaningful review).

However, the Fourth Circuit has regularly affirmed cases with RFCs limiting claimants to work at a non-production pace, including in Sizemore, where the Fourth Circuit found that substantial evidence supported a limitation to "low stress non-production jobs with no public contact." Sizemore, 878 F.3d at 80-81; see also, e.g., Martinez v. Berryhill, No. 3:17-CV-186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018) (reviewing and affirming RFC that limited

the plaintiff to "simple routine repetitive tasks but not at a production-rate pace"), aff'd sub nom. Martinez v. Saul, 776 Fed. App'x 175 (4th Cir. 2019); Michaels v. Colvin, No. 3:15-CV-388-RJC-DSC, 2016 WL 8710975 (W.D.N.C. Mar. 25, 2016), (reviewing and affirming RFC that limited claimant to "work in a nonproduction pace rate"), aff'd sub nom. Michaels v. Berryhill, 697 F. App'x 223 (4th Cir. 2017); King v. Berryhill, No. 3:18CV1, 2019 WL 1317732, at *2 (W.D.N.C. Mar. 22, 2019) (affirming an RFC limitation to simple, routine, repetitive tasks "at a non-production pace"), aff'd sub nom. King v. Saul, 787 Fed. App'x 170 (4th Cir. 2019); Pepper v. Comm'r of Social Security Admin., No. 22-1381, 2023 WL 3073532 (4th Cir. April 25, 2023) (finding no manifest or fundamental error where RFC prohibited "fast-paced production rate work"). In a recent decision just this month, the Fourth Circuit similarly affirmed an ALJ's decision and analysis that involved an RFC limiting the claimant to, *inter alia*, "unskilled, routine, and repetitive tasks performed at a non-production pace" to address a moderate limitation in concentration, persistence, or pace, finding that "[t]he ALJ's reasoning can be followed, and her conclusion clears the substantial evidence bar." Calhoun v. Comm'r of Soc. Sec., No. 24-1315, __ F.4th ___, 2026 WL 2602326 (4th Cir. Sept. 3, 2026).

Other district court cases in this circuit have considered similar contentions and upheld ALJ determinations with similar RFC limitations. See, e.g., Jessie F. v. Bisignano, No. 1:24CV995, 2025 WL 1950265 (M.D.N.C. May 28, 2025) (reviewing and affirming ALJ decision with RFC limiting the plaintiff to "no production-rate pace"); Jenna S. v. Dudek, No. 1:24CV383, 2025 WL 723609 (M.D.N.C. March 6, 2025) (reviewing and affirming ALJ decision with an RFC limiting the plaintiff to "a low stress environment with no production pace"); Shaw v. Kijakazi, No. 1:20CV581, 2021 WL 3079905, at *7 (M.D.N.C. July 21, 2021)

(concluding that remand was not required where the ALJ found that the claimant could perform simple, routine, repetitive tasks but not at a "production rate pace"), recommendation adopted, slip op. (M.D.N.C. Aug. 23, 2021); Beckstrom v. Saul, No. 1:19CV746, 2020 WL 1929021 (M.D.N.C. Apr. 21, 2020) (finding sufficient basis for review for RFC limiting the plaintiff to "simple, routine, and repetitive tasks not at a production rate pace"), recommendation adopted, slip op. (M.D.N.C. May 15, 2020); Wood v Comm'r of Soc. Sec., 2022 WL 18635520 at *8 (W.D.N.C. Sept. 21, 2022) (upholding ALJ decision limiting Plaintiff to "routine tasks not at a production rate pace" to account for moderate limitations in concentration, persistence, and pace); Adkins v. Kijakazi, No. 3:20-00281, 2021 WL4282584 (S.D.W.Va. Sept. 21, 2021) (affirming ALJ's determination with RFC limitation to "simple, routine tasks at a non-production rate pace"); O'Dell v. Saul, 2021 WL 1233480, at *5 (W.D.N.C. Apr. 1, 2021) ("[C]ases show that the inclusion of a 'non-production work' limitation in the RFC is not categorically reversable, but must be evaluated on a case-by-case basis to see if there is adequate explanation and substantial evidence to support the restriction.").

Thus, "Thomas and Perry 'did not create a categorical rule that failing to define certain terms constitutes a reversible error,' Taylor v. Saul, No. 3:19CV468, 2020 WL 4340536, at *6 (E.D. Va. July 27, 2020), but, rather, 'clarified that a reviewing court's ability to understand phrases such as 'production rate of pace' in an ALJ's opinion depends on the phrase's context and use,' Katherine M. A. v. Saul, No. 3:19CV649, 2021 WL 1207739, at *10 (E.D. Va. Feb. 2, 2021)." Jessie F., 2025 WL 1950265 at *5.

In this case, the ALJ limited Plaintiff to work at a "non-production-rate-pace" (Tr. 27), and, notably, a "production rate pace" is a phrase found in the definition of Light Work in the Dictionary of Occupational Titles ("DOT"):

> [A] job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, App'x C ("Components of the Definition Trailer"), § IV ("Physical Demands -Strength Rating"), 1991 WL 688702 (emphasis added). Similarly, the Social Security Programs Operation Manual System (POMS) Medical and Vocational Quick Reference Guide likewise explains that:

> The Department of Labor rated an occupation as light when it requires walking or standing to a significant degree, sitting most of the time while pushing or pulling arm or leg controls, or working at a production rate while constantly pushing or pulling materials even though the weight of the materials in these situations is negligible.

POMS DI 25001.001 Medical and Vocational Quick Reference Guide (emphasis added).

Thus, "production rate pace" is a term of art describing constant movement or engagement, and other courts have found that this additional context in the DOT provides the clarity for "production rate pace" that was missing from other cases. See Wood v. Comm'r, No. 1:20-cv-231-GCM-DCK, 2022 WL 18635520, at *8 (W.D.N.C. Sept. 21, 2022); Shaw v. Kijakazi, No. 1:20CV581, 2021 WL 3079905, at *7 (M.D.N.C. July 21, 2021), recommendation adopted, 2021 WL 6202788 (M.D.N.C. Aug. 23, 2021); Jessie F. v. Bisignano,

No. 1:24CV995, 2025 WL 1950265 (May 28, 2025); see also Gravel v. Kijakazi, No. 5:21-CV-178-KDB, 2022 WL 3008437, at *3 (W.D.N.C. July 28, 2022).

Indeed, the Vocational Expert expressed no confusion with the ALJ's limitation to jobs not at a "production pace." (Tr. at 67.) See also Christopher J. v. O'Malley, 2024 WL 3400525 (M.D.N.C. July 12, 2024) (noting that "the VE here did not express any difficulty in understanding the meaning of the ALJ's preclusion of 'production pace' or 'quota-based' work in responding to the ALJ's dispositive hypothetical question" (internal citations and quotations omitted)). O'Dell v. Saul, 2021 WL 1233480, at *5-6 (W.D.N.C. Apr. 1, 2021) ("[T]he VE expressed no confusion about the hypotheticals presented during the hearing or in the interrogatory, both of which included 'non-production work' as a limitation, and Ms. O'Dell's attorney never ask for further explanation on the term.").

Even more notably, Plaintiff's counsel at the hearing (who is not Plaintiff's current counsel in this case) also acknowledged her understanding that "the jobs we've described are not production paced." (Tr. at 71.) In questioning the Vocational Expert after the Vocational Expert identified various jobs within the RFC, Plaintiff's counsel specifically stated that, "I understand these are not production-paced jobs." (Tr. at 71.) See also Jessie F. v. Bisignano, 2025 WL 1950265 (M.D.N.C. May 28, 2025) ("[D]espite faulting the ALJ for not saying more about the meaning of the terms 'production pace' work or 'production-rate pace' in his decision, or his hypothetical questions to the vocational expert at the hearing before the ALJ, Plaintiff (through counsel) failed to cross-examine the vocational expert regarding the meaning of that non-production restriction, or how the three jobs the vocational expert cited adhered to that restriction."); Jenna S. v. Dudek, No. 1:24CV383, 2025 WL 723609, at *5 (M.D.N.C.

Mar. 6, 2025) (collecting cases); Shaw v. Kijakazi, No. 1:20CV581, 2021 WL 3079905, at *8 (M.D.N.C. July 21, 2021) ("[A]t the hearing before the ALJ, Plaintiff failed to question the VE regarding the meaning of the phrase 'production rate pace' or how the jobs the VE cited adhered to that restriction, despite the fact that he had the opportunity (through his attorney) to cross-examine the VE."), recommendation adopted, No. 1:20CV581, 2021 WL 6202788 (M.D.N.C. Aug. 23, 2021). Here, not only did Plaintiff's counsel fail to seek further clarification regarding "production pace", she affirmatively acknowledged her understanding of the limitation and agreed that "the jobs we've described are not production paced" and "I understand these are not production-paced jobs." (Tr. at 71.)

These statements by Plaintiff's counsel at the hearing also reflect that, even if the ALJ erred by not providing additional explanation about the meaning of the production pace limitation, the error is harmless. See also Gravel, 2022 WL 3008437, at *3 (finding "an independent reason to affirm the ALJ's decision on this point," explaining that none of the jobs the ALJ relied on at step five "involve a 'production' setting of any kind," and concluding that "the 'production' limitation was in practical effect irrelevant to the ALJ's ultimate decision and thus would be harmless error if it was error at all." (citing Shinseki v. Sanders, 556 U.S. 396, 407-10 (2009)); Jessie F., 2025 WL 1950265 at *7 ("Even assuming the ALJ erred by not providing additional explanation about the meaning of the production pace limitation, the error is harmless. None of the jobs the ALJ relied on at step five involve a production setting."). The same holds true in the present case. At step five, the ALJ identified three jobs that Plaintiff remained capable of performing despite her impairments: (1) photocopy machine operator, DOT 207.685-014, 1991 WL 671745, (2) router, DOT 222.587-038, 1991

WL 672123, and (3) cashier II, DOT 211.462-010, 1991 WL 671840, and ultimately relied on the photocopy machine operator and router positions. (Tr. at 36-37.) Nothing in the DOT job descriptions for any of these positions suggests that the jobs in question involve "production" or "production pace" work, and the statements by Plaintiff's counsel at the hearing reflect that Plaintiff's counsel specifically agreed that none of the jobs the ALJ relied on at step five are production-paced jobs. Thus, an alleged error is harmless. See Calhoun, __ F.4th at ___, 2026 WL 2602326 at *6 ("[W[e will not remand a case to the agency unless we not only see an error but find it harmful" and "errors in the analysis of residual functional capacity can be harmless" (internal citations and quotations omitted)).

Finally, the Fourth Circuit in Perry explained that in Sizemore, the term "non-production jobs" allowed meaningful review because of the "additional context" provided by the ALJ's explanation. As another judge of this Court reasoned:

> In [Perry], the Fourth Circuit specifically distinguished its decision in Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017), where it "found that an ALJ had adequately explained a[n RFC] assessment that restricted the claimant, in part, to 'non-production jobs,' " as "the ALJ in Sizemore provided additional context, explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in [concentration, persistence, or pace]," which "descriptors helped to explain the restriction intended by the ALJ, and allowed [the Fourth Circuit] to evaluate whether that restriction adequately accounted for the claimant's limitations." Perry, [765 Fed. App'x at 872] n.1. As in Sizemore, and unlike in Perry, the ALJ here provided the necessary 'descriptors,' limiting [the p]laintiff to 'a low stress, low production environment with no rigid quota and occasional exposure to people.' Accordingly, Perry does not justify remand in this action.

Ross v. Berryhill, No. 1:17CV1145, 2019 WL 1430129, at *1 (M.D.N.C. Mar. 29, 2019) (internal parenthetical citation omitted). Likewise in the present case, to the extent Plaintiff singles out the restriction precluding "non-production-rate-pace" work, that limitation is part

of a larger description limiting Plaintiff to a position involving (1) simple, routine tasks, (2) simple, work-related decisions, (3) only occasional changes in the workplace setting, and (4) only frequent contact with supervisors, coworkers, and the public. (Tr. at 27.) See Sizemore, 878 F.3d at 80–81; see also Ricky F. v. O'Malley, No. 1:23CV720, 2024 WL 4333136, at *7 (M.D.N.C. Sept. 27, 2024) ("To the extent Plaintiff singles out the restriction precluding 'production pace' work, that limitation is part of a larger description limiting Plaintiff to a position involving only "simple routine tasks and simple work related decisions" and "occasional changes in the workplace setting."). The Fourth Circuit's decision in Thomas involved other problems that, combined together with the lack of information regarding "production rate or demand pace", frustrated review, including that "the ALJ drew no explicit conclusions about how the claimant's mental limitations affected her ability to perform job-related tasks for a full workday," and "the ALJ did not sufficiently explain how she weighed the significant evidence related to the claimant's mental-health treatment," and "the ALJ expressed the claimant's RFC first and only then concluded that the limitations caused by claimant's impairments were consistent with her RFC." O'Dell v. Saul, 2021 WL 1233480, at *5 (W.D.N.C. Apr. 1, 2021). In the present case, Plaintiff does not raise any such additional contentions. As discussed above, the ALJ provided extensive analysis of Plaintiff's abilities and how the multiple limitations in the RFC addressed any concerns, including as to the no more than moderate limitations in concentration, persistence, and pace, with support in the medical opinion evidence, the medical record, including mental status examinations and conservative treatment, and Plaintiff's daily activities. The Court is able to follow the ALJ's

reasoning, and substantial evidence supports the determination. Accordingly, the Court finds no basis for remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #8] is DENIED, that Defendant's Dispositive Brief [Doc. #12] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 21st day of September, 2026.

Joi Elizabeth Peake
United States Magistrate Judge